UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOE MEYERS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-161-JD-MGG |
| RON NEAL, | |
| Defendant. | |

OPINION AND ORDER

Joe Meyers, a prisoner without a lawyer, is proceeding in this case on two claims for injunctive relief. "[A]gainst Warden Ron Neal, in his official capacity, for allegedly violating his rights under the First Amendment and [Religious Land Use and Institutionalized Persons Act ("RLUIPA")] by: (a) denying him halal diet; (b) forbidding celebration of Muslim holidays; (c) denying weekly Talim; (d) denying oils necessary for his religious observance; (e) rendering null Friday Muslim services by scheduling them outside the time window required by Muslim religion; (f) prohibiting prisoners to attend Muslim services if they miss a single service; and (g) requiring that Muslim services by celebrated in a chapel used by the adherents of other religions." ECF 8 at 4-5. "[A]gainst Warden Ron Neal, in his official capacity, for allegedly violating the Equal Protection Clause of the Fourteenth Amendment by: (a) denying halal diet; (b) forbidding celebration of Muslim holidays; and (c) denying weekly Talim . . .." *Id.* at 5. Warden Neal moved for summary judgment, arguing that Meyers did not exhaust his administrative remedies before filing suit. ECF 17. Meyers filed a response. ECF 24.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (emphasis added). Nevertheless, "[f]ailure to exhaust is an affirmative defense that a defendant

has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002).

I. FACTS

Warden Neal submits Meyers' grievance history (ECF 17-3), which shows that Meyers submitted two potentially relevant grievances. Each grievance will be addressed in turn.

*Grievance of October 2, 2018[1]*

Meyers submitted a grievance dated October 2, 2018, alleging that the chaplain had violated the prison's guidelines by removing Meyers' name from the Islamic Service attendance list only 4 days after he was mistakenly marked as absent from a religious service.[2] ECF 17-3 at 3. Meyers asserted that the prison's guidelines required the chaplain to conduct an audit of the attendance list every 30 days, which would have given the chaplain an opportunity to inform Meyers of the absence and realize the mistake. *Id.* Meyers concluded that, if the chaplain had followed the guidelines, his name never would have been removed from the attendance list. *Id.* Meyers requested as relief that the chaplain "not remove my name from the Islamic [Service attendance list]

---

[1] Because this grievance was rejected by the prison, it was not assigned a grievance number.

[2] Under the prison's rules, an inmate with an unexcused absence from a religious service is removed from the religious service's attendance list and barred from attending future services. ECF 17-3 at 21-22.

3

without providing 30 days window of opportunity to inform or not of the absence . . ..." *Id.* Meyers listed the incident date as October 19, 2018 through October 23, 2018. *Id.* The prison returned this grievance as unfiled on November 7, 2018 because (1) it did not include a specific incident date and (2) the grievance date was incorrect. *Id.* at 2.

Meyers argues his October 2 grievance was improperly rejected because the Indiana Department of Correction's ("IDOC") policy requires only that the prisoner sign and date the grievance and does not require a correct grievance date. ECF 24-1 at 4. Meyers is correct that IDOC's policy does not require a correct grievance date. The policy only requires:

> Each completed State Form 45471, "Offender Grievance," must meet the following standards:
> 1. Each part of the form shall be completed;
> 2. It shall be written legibly;
> 3. It shall avoid the use of legal terminology;
> 4. It shall raise the same issue that the offender raised in trying to get the informal resolution and document the attempts at informal resolution;
> 5. It shall relate to only one event or issue;
> 6. It shall be signed, dated, and submitted by an offender on his or her own behalf, although it can be written by another offender or staff member if the offender is unable to do so due to a physical, language, or other problem;
> 7. It shall explain how the situation or incident affects the offender; and,
> 8. The offender shall suggest appropriate relief or remedy.

ECF 17-2 at 9. Meyers' October 2 grievance meets each of these requirements. Thus, because Warden Neal has not shown that Meyers' October 2 grievance was properly rejected, the court will consider the merits of this grievance.

4

*Grievance 104601*

On November 8, 2018, Meyers filed Grievance Number 104601, alleging that the chaplain was neglecting his duties by allowing other prisoners to monitor attendance at Islamic religious services. ECF 17-3 at 16. Meyers asserted that the chaplain's negligence had caused Meyers to be mistakenly removed from the Islamic Service attendance list. *Id.* Meyers noted that he had since been reinstated on the attendance list but asserted that he "should not have been removed at all." *Id.* Meyers requested as relief that the chaplain, and not another prisoner, be required to monitor the attendance at Islamic religious services in the future. *Id.* The prison denied Grievance 104601 on November 14, 2018, asserting that the removal of Meyers' name from the Islamic Service attendance list "was a mistake and was immediately corrected." *Id.* at 15. The prison further asserted that it is "the offender's responsibility to make sure his name is checked off prior to entering the chapel," and that the chaplains have the authority to audit the attendance list. *Id.* Meyers appealed the prison's rejection of Grievance 104601, asserting that he never should have been removed from the attendance list and that the chaplain should be required to monitor attendance. *Id.* at 11. His appeal was denied. *Id.* at 10.

II. ANALYSIS

The parties do not dispute that the prison had a grievance system and that Meyers' claims were grievable. Rather, the parties dispute whether Meyers filed a grievance sufficiently related to his claims in this lawsuit. Warden Neal argues that Meyers failed to exhaust his remedies because his grievances have "no relation to the claims permitted to proceed in this lawsuit." ECF 18 at 7-8. Meyers responds that his

5

grievances "clearly alerted prison officials to his principal allegation [of] religious accommodations" and "notified officials that he was being denied" his rights under the First Amendment, Fourteenth Amendment, and RLUIPA. ECF 24-1 at 4; ECF 24-3 at 2. He asserts that his "mere listing that he was removed from his obligatory religious faith functions in his grievance did give notice to prison officials that he was contending that lack of access to the church impeded his free exercise of religion." ECF 24-1 at 4.

Here, Meyers is proceeding in this case on one claim under the First Amendment and RLUIPA ("First Amendment claim") and one claim under the Fourteenth Amendment ("Fourteenth Amendment claim"). ECF 8 at 4-5. Each of Meyers' claims will be addressed in turn.

a. First Amendment Claim

In Meyers' First Amendment claim, he alleged Warden Neal had violated his rights under the First Amendment and RLUIPA by (a) denying him a halal diet, (b) forbidding celebration of Muslim holidays, (c) denying weekly Talim, (d) denying oils necessary for his religious observance, (e) rendering null Friday Muslim services by scheduling them outside the time window required by Muslim religion, (f) enforcing a rule prohibiting prisoners from attending Muslim services if they miss a single service, and (g) requiring that Muslim services be celebrated in a chapel used by the adherents of other religions. *See* ECF 8 at 4-5. Here, Meyers cannot rely on either his rejected October 2 grievance nor his accepted Grievance 104601 to show he exhausted sub-claims (a), (b), (c), (d), (e), and (g), as neither of these grievances had any relation to his allegations in these sub-claims. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)

(holding that exhaustion is designed to provide the prison with notice of the problem and give them an opportunity to fix it). Alternatively, Meyers can rely on both his October 2 grievance and Grievance 104601 to show he exhausted sub-claim (f), as both grievances were related to his allegations in this sub-claim. Specifically, both grievances complained that the chaplain had erroneously removed Meyers from the attendance list after Meyers was mistakenly marked as absent from a religious service, which put the prison on notice Meyers was challenging its rule prohibiting prisoners from attending Muslim services if they miss a single service. *See id.* Moreover, the prison understood Grievance 104601 to complain of Meyers' removal from the attendance list, as it rejected the grievance on the ground that Meyers' removal from the attendance list "was a mistake and was immediately corrected." *See id.*; ECF 17-3 at 15. Accordingly, summary judgment should be denied as to sub-claim (f), but granted as to the remainder of Meyers' First Amendment claim.

     b. Equal Protection Claim

In his Equal Protection claim, Meyers argued the prison violated the Equal Protection Clause of the Fourteenth Amendment by: (a) denying halal diet; (b) forbidding celebration of Muslim holidays; and (c) denying weekly Talim. ECF 8 at 5. Here, the undisputed evidence shows Meyers did not exhaust his remedies regarding his Equal Protection claim, as neither of his grievances related to his allegations in this claim. Thus, summary judgment must be granted in favor of Warden Neal on this claim.

For these reasons, the court:

(1) DENIES the motion for summary judgment (ECF 17) with respect to sub-claim (f) of Meyers' First Amendment claim but GRANTS it in all other respects;

(2) DISMISSES WITHOUT PREJUDICE Meyers' Equal Protection claim and sub-claims (a), (b), (c), (d), (e), and (g) of Meyers' First Amendment claim; and

(3) REMINDS the parties this case is now proceeding only on sub-claim (f) of Meyers' First Amendment claim, in which he alleged Warden Neal violated his rights under the First Amendment and RLUIPA by "prohibiting prisoners to attend Muslim services if they miss a single service[.]"

SO ORDERED on June 22, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT